148 So. 328

## ALABAMA CLAY PRODUCTS CO. v. CITY OF BIRMINGHAM.

### 6 Div. 194.

Supreme Court of Alabama.
May 18, 1933.

Smyer, Smyer & Bainbridge, of Birmingham, for appellant.

W. J. Wynn and Jas. H. Willis, both of Birmingham, for appellee.

BOULDIN, J.

The city of Birmingham sued to recover ad valorem taxes claimed to be due on the shares of stock in Alabama Clay Products Company, a domestic corporation, for the years 1926 to 1930, inclusive.

The sole question presented on appeal is: What was the situs of the corporation for purpose of taxing the shares?

The evidence is without dispute, consisting in part of agreed facts, and in part of the oral testimony of Judge E. N. Hamill, witness called by defendant.

The certificate of incorporation, filed in the probate office of Jefferson county, Ala., on November 20, 1921, recited: " 'C. The principal place of business and the office of said corporation shall be Lewisburg, Jefferson County, Alabama, with the privilege of establishing branch offices at other places within or without the State of Alabama.' " At that time it was contemplated that the corporation should acquire certain lands at Lewisburg deemed a valuable location for a brickmaking plant, and to build such plant and operate the same with business offices at Lewisburg.

After acquiring the property, and a permit from the securities commission to sell stock, sufficient sales of stock to erect such plant were not made; and, thereupon, the corporation in due course bought the properties of Bessemer Fire Brick Company, a going concern, with one plant operating at Ensley within the corporate limits of Birmingham, and another just outside the corporate limits of Bessemer, Ala. The Lewisburg site was abandoned, no plant was ever erected, no business office located there, and no corporate business ever conducted there other than mining and shipping small quantities of clay and shale to the Bessemer plant. During the period covered by the suit active business has been done through operations of the purchased plant, with business offices in Birmingham, as more fully discussed later in this opinion.

The general incorporation laws of the state require the certificate of incorporation made out by the incorporators and filed in the office of the judge of probate "shall set forth: * * * (3) Location.—The location of its principal office in this state." Code, § 6965 (3446).

The corporation may, by amendment of its charter, "change the location of its principal office in this state." Code, § 6982.

No such amendment was ever made. Our statute fixes the situs of shares in a domestic corporation for purposes of taxation at "its home or chief office in the State." Acts 1927, p. 166, § 25.

Appellant insists the charter designation of the location of its principal office is conclusive in law, binding upon the taxing authorities; and evidence of the location of its principal office in fact is inadmissible.

This question is of first impression in Alabama. The decisions of other states are not in harmony. Some states, following the early New York case of Western Transportation Co. v. Scheu, 19 N. Y. 408, hold the charter designation, when required by statute, conclusive. Other states hold the charter not conclusive in tax proceedings; that the actual location of the principal office is an issue of fact, which may be shown by evidence aliunde, and taxation imposed accordingly. Some cases have involved a fictitious location in the first instance, or a fictitious change of location for the purpose of evading the payment of taxes at the place of the actual situs of the business. The same principles would apply to a fictitious location where no business is done, whether so named in the first instance, or from failure to amend the charter to conform to an entire change of location in fact. If the situation works an evasion of taxation, the result is the same.

■ The purpose of the statutory requirement of a charter designation of location is primarily for the benefit of the public; such as the fixing of jurisdiction of courts, facilitating service of process, the tax situs, a place of contact for persons having occasion to find the responsible management, etc. 14 C. J. § 420.

■ As a broad principle of public policy the burdens of taxation should be borne in fair proportion by the interests which have the benefits and protection of government. In the matter of shares in domestic corporations our statute fixes this situs at its "home

or chief office" in this state. It is contemplated, as of course, that this will be the home or chief office in fact. The law contemplates the charter shall truly designate such situs. Any dereliction in this regard should not be permitted to furnish the basis for evasion of taxes.

We, therefore, adopt as the view best supported in principle, and it seems by the majority opinion in other states, that when the charter location has become fictitious, working an evasion of taxes at the situs of its "home or chief office," the charter designation will be disregarded in matters of taxation.

There would seem to be little more difficulty, if any, in proving the actual location of the home or chief office of a domestic corporation, than in proving the domicile of an individual for purposes of taxation. Inter-Southern Life Ins. Co. v. Milliken, Tax Receiver, 149 Ky. 516, 149 S. W. 875, L. R. A. 1917A, 460, and note 469, with full review of authorities; 2 Cooley on Taxation (4th Ed.) § 486; Georgia Fire Insurance Company v. City of Cedartown, 134 Ga. 87, 67 S. E. 410, 19 Ann. Cas. 954, note 960; 26 R. C. L. p. 180, § 152; 61 C. J. 536, § 650, and notes.

During the taxing period here involved, the Ensley plant, located within the corporate limits of Birmingham, was operated by a lessee on a royalty basis. The Bessemer plant, outside Birmingham city limits, was operated by defendant corporation. It maintained an office at the plant for the use of the superintendent of the plant in matters connected therewith. But the business offices were maintained in the Martin Building in the city of Birmingham.

The secretary, bookkeeper, and stenographer occupied these offices; the president, who was also general manager, alternated between the two offices as occasion demanded, and was also on the road.

Here in the Birmingham office the business side of the corporate activity was conducted, stockholders and directors meetings held, minute books and records kept, contracts for purchases and sales made, bookkeeping done, bills receivable and bills payable kept and paid, correspondence conducted and filed, pay-roll checks for the plant made out, and principal banking done.

In the Birmingham City Directory by direction of the company, the following appeared in bold face type: "ALABAMA CLAY PRODUCTS CO., ABRAHAM S. HOLBERG, PRES-GENL MGR. ROBERT H. WHAR-TON, V-PRES-TREAS. D. E. HOLBERG, SEC. MFRS OF FACE AND FIRE CLAY PRODUCTS, 835 Martin Bldg., 2308 4th av n. Tel. 3—8465."

In the Birmingham Telephone Directory appeared in similar type: "ALA. CLAY PRODUCTS CO., MARTIN BLDG. 3—8465."

In the Bessemer Division of the same directory appeared in ordinary type: "Ala. Clay Products Co., 2800 Alabama av., Bessmr-9."

The relative use of this means of contact with the public in the promotion of its business is in keeping with the evidence as a whole touching the "home or chief office" of the company.

The location of business and executive offices, where the public deals with the management, the governing bodies function, and records are kept, rather than the location of plant operations of this character, is to be deemed the location of the "home or chief office." 26 R. C. L. p. 180, § 152.

We concur with the trial court in holding such office to be in the city of Birmingham.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.