149 So. 101
**STATE ex rel. TALLAPOOSA COUNTY v. BUTLER, State Tax Com'r.**

**3 Div. 55.**

Supreme Court of Alabama.

June 8, 1933.

Rehearing Denied June 29, 1933.

Thos. E. Knight, Jr., Atty. Gen., and A. A. Evans, Asst. Atty. Gen., for appellee.

James W. Strother, of Dadeville, and Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

**THOMAS, Justice.**

The motion of the state of Alabama to dismiss the "application for the writ of mandamus" was challenged by demurrer, which, on due consideration, was overruled, the motion of the state granted, and the application for writ of mandamus dismissed. From the action of the trial court in sustaining the state's motion, this appeal was taken.

The decisions in State ex rel. Chilton County v. Butler, State Tax Com'r, 225 Ala. 191, 142 So. 531, and State ex rel. Foshee v. Butler, State Tax Com'r, 225 Ala. 194, 142 So.

214

533, touch some phases of this case. In the Foshee Case, the holding was that generally the individual "cannot enforce right owing to the state"; that mandamus proceeding by the state on the relation of a taxpayer to compel the state tax commissioner to assess property of public utility was an "interest of state in sovereign capacity, requiring consent of Attorney General."

▆▆▆ The Chilton County Case was more comprehensive; (1) that the state may, through its Attorney General, dismiss unauthorized proceedings to "enforce rights affecting state in sovereign capacity" (sections 854, 861, 872, Code 1923); (2) remedy by petition for mandamus to enforce private rights may be pursued without using the name of the state (section 8978, Code); (3) mandamus sought against a public officer to require the performance of "duty to the general public as distinguished from the state in its sovereign capacity," is properly brought in the name of the state "on relation of petitioner having the right" (section 8978, Code); (4) the state tax commissioner is a public officer of the state, and a county tax levy for "general purposes must be based upon assessment by state tax commissioner in so far as concerns public utility" (Gen. Acts 1919, p. 330, § 165; Gen. Acts 1923, p. 192, § 74; Const. 1901, § 215); (5) a "county" is merely a governmental agency possessing no power and subject to no duty not "originating from law creating it" or in "the statutes declaring the power and duty"; (6) the right of the county to levy tax is bounty conferred by the state; only such as the state may deem expedient—"not greater nor other than it possesses"; (7) that mandamus proceeding by the state *on the relation of the county* to compel the state tax commissioner to assess property of public utility affects the interest of the "state in sovereign capacity," and requires the consent of the Attorney General to "appeal from adverse judgment" (Code 1923, §§ 854, 861, 872; Gen. Acts 1919, p. 330, § 165; Gen. Acts 1923, p. 192, § 74; Gen. Acts 1931, p. 5).

Thus it is apparent that the court held in the Chilton County Case that a county had no right to interfere with the state tax commission *in its assessment* of property of the power company *in that county*. Appellant concedes the soundness of that decision, but insists that the *allocation* made by that commission does not fall within that class—as that of an assessment.

It is well to note that the same section of the statute that places the duty to "assess" upon the tax commission, likewise places upon it the duty to "allocate." For convenience of reference we supply italics and subdivide that section:

"(a) The State tax commission shall carefully examine and consider said statements and information, and shall hear evidence and secure further and additional information as far as may be in its power, *whenever it may deem it necessary to do so*, to show the true value of properties of such corporations, associations, companies, and individuals, and the true value of that portion thereof which is situated within this State *and within the respective counties and cities and towns* in this State; and each interested company, corporation, association or individual may appear before said commission and introduce material and relevant testimony before the same touching the true value of said property within this State and the *apportionment thereof*. (b) From these statements, evidence and information adduced before it, the State tax commission shall *ascertain, fix and determine the true value of such property; and of the portion thereof which is situated within this State, and the respective value of the several portions within the different counties and cities, towns and school districts having a special assessment, in this State, in which such portions are taxable,* (c) and for that purpose said commission may require and compel by subpoenas to be issued by it, any person or persons, or the officers and agents, or any of them, of any company, corporation, or association embraced by the provisions of this act, to appear before it with such books, papers, documents, and information as the commission may require, and to submit themselves to examination by said commission, and it shall have all the powers with respect thereto conferred upon it by this act." Section 113(89), Compilation of the Revenue Laws of 1929, Gen. Acts 1919, pages 282, 336. § 174.

From the foregoing statute it appears that the allocation is but the natural result and necessary act in and of the assessment by the state tax commission. In fact it inures in the assessment itself. The statute expressly places upon the tax commission the duty of *"ascertaining, fixing and determining the true value"* of the properties of the corporation that lie (1) "within the different counties and (2) cities, towns and (3) school districts having a special assessment, in this state in which such portions are taxable." (Italics and numbers supplied.) When the tax commission executes such power as the statute commands, the values so fixed by it are, by force thereof, allocated and apportioned to the respective counties, cities, and school districts, as the case may be. If the allocation or apportionment is to be changed or set aside, then the assessment, as required by the law to be made, must necessarily be changed. If the county, as declared in the Chilton County Case, supra, has no right to interfere directly with the tax commission *in the assessment*, then has it a right to do this indirectly by mandamus—by having the "allocation" or "apportionment" changed or set aside? This effort, if effective, would of necessity change the allocation made as required by law to be made, in that the statute

directed the state tax commission to value the property of the Alabama Power Company that lies in Chilton, Elmore, and Tallapoosa counties; to report that valuation to the tax assessors of said counties, and then the respective counties will make their levies as the law directs.

The state's counsel illustrate the effect of several assessments as they are more or less dependent upon the other; for example, if the tax commission had found "the total value of the property of the Alabama Power Company" to be at a fixed amount; found that part of the property in East Tallassee was worth $500,000; that part in another city or town of that county was worth $300,000, and that part thereof that lay in one school district $100,000, and that part in another school district $100,000; and "that this comprised all of the property of the Alabama Power Company in Tallapoosa County," then to change the county's apportionment, as sought, would necessarily change and make erroneous *some of the other allocations;* to thus change any one of the other municipalities would necessarily change and make erroneous this county's allocation, and those of other counties. The law intended that no unnecessary confusion should arise, when, as here, not properly presented within the tax year. The Chilton County Case, 225 Ala. 191, 142 So. 531, does not rule the instant petition for mandamus, presented, as it was, at the expiration of the tax year and granted after the expiration and at a time when the tax commission had lost control.

▇▇▇ This is not saying that the respective counties, municipalities, or school districts to be affected by the assessments may not duly appear within the tax year (State v. Doster-Northington Drug Co., 196 Ala. 447, 71 So. 427) and be heard by the commission (on their evidence) as to the reasonableness of said assessments and the due apportionment thereof; and if, after due and timely application and opportunity to introduce their evidence in support of such claims, and with the proper parties, they are, under the facts, denied their proportionate share of such taxes, they are entitled to review the same by appropriate effort. If there is no proper appeal provided, mandamus may be employed to prevent a failure of justice, where there is a clear right *and an absence of any other remedy.* Williams v. Board of Dental Examiners of Alabama, 222 Ala. 411, 133 So. 11; Town Council of Guntersville et al. v. Henry et al., 222 Ala. 474, 133 So. 5; Foshee, Clerk, v. State ex rel. Messer, 210 Ala. 155, 97 So. 565.

▇▇▇ In the month of March of each year, the tax commission is charged with the duty to assess for taxation, the properties of public utility corporations. That commission is vested with powers for procuring evidence, as we have indicated, to guide in reaching a right judgment, and that authority is regulat-

ed and generally limited by the tax year. State v. Doster-Northington Drug Co., supra. A petition in a mandamus proceeding must be construed strongly against the pleader *on demurrer.* State ex rel. Waldrop, Clerk v. Hogan, Coroner, 204 Ala. 325, 85 So. 557. So construed, this petition does not show that the relator offered to duly introduce before the tax commission, evidence to guide that body when the matters of assessment and allocation were being considered, until long after its judgment was rendered—on July 15—and became final, August 15, 1932. It was not until September 16, 1932—only fourteen days before the end of the tax year, and beyond which the commission had no power to act on matters not duly controverted. To have set aside the assessment at such late date, when no due effort had been theretofore initiated, would have affected (1) the right of the power company, (2) that of Elmore county, and (3) all interested cities, towns, and districts in the tax fixed by that assessment and to become due on October 1, thereafter. The commission declined to set aside the assessment, but offered to hear relator's protest on September 27. This offer being declined or not acted upon, on September 30, relator filed this petition and procured the order for the alternative writ of mandamus on October 1, 1932, and that writ issued and was served on Mr. Butler on October 4. It was dismissed on December 1, and twenty-nine days thereafter, this appeal was prosecuted (December 30, 1932) and was submitted here on May 18, 1933.

In State v. Doster-Northington Drug Co., 196 Ala. 447, 71 So. 427, it was declared: "Notwithstanding the right of general and complete supervision is given to the State Tax Commission by § 2223, Code 1907, yet in view of the provision of § 2260, Code 1907, and the other statutes, the power of the State Tax Commission to set aside valuations and assessments must be exercised before the end of the current tax year."

▇▇▇ And in State ex rel. King et al. v. Board of Education of Russell County, 214 Ala. 620, 622, 108 So. 588, 589, the court said:

"We are inclined to the view that a denial of the writ may properly be rested upon the further ground that to award it would tend to introduce confusion or disorder in the public schools of Russell county, which are already in operation upon the apportionment as fixed by the county board. A reapportionment at this time would doubtless create confusion or disorder in the public school system of the county.

" 'Mandamus is not a writ of right, and the granting or denial of an application for mandamus rests very largely within the discretion of the court. * * * Mandamus, being a discretionary writ, will not be granted, when it would work injustice, or introduce confusion or disorder, or where it would not promote substantial justice.' Bibb v. Gaston,

216

146 Ala. 434, 40 So. 936." Harman, Supt. of Education v. Ide, 224 Ala. 414, 140 So. 418.

The officials with authority of the petitioning county knew they had the right to duly appear before the tax commission and produce evidence to aid a right judgment as between the municipalities at interest; that they had such right from March 1 to October 1 of the tax year. With such knowledge they waited until the commission rendered judgment, and only fourteen days before the various taxes to be affected became due, first complained to the tax commission. That complaint sought the setting aside the assessments and allocations, and then to permit evidence for a *reassessment* or *reallocation.* This, the commission declined, and on September 30, 1932, filed its petition for mandamus, and, on the next day, after the tax year had closed and the commission was powerless to act, *obtained the order* for alternative writ of mandamus.

■ The power company was thereafter justified in paying the taxes as required by the assessments to the several interested counties, municipalities, and school districts. No doubt this has been done, and to upset that assessment and allocation under the facts disclosed would work injustice, confusion, or disorder. There was no error in the ruling of which complaint is made, and that action is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.