## TENNESSEE COAL, IRON & R. CO. v. BOARD OF EDUCATION OF JEFFERSON COUNTY.

### No. 7823.

Circuit Court of Appeals, Fifth Circuit.

Nov. 20, 1935.

Augustus Benners, of Birmingham, Ala., for appellant.

Chas. E. Rice and Peyton D. Bibb, both of Birmingham, Ala., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action by the appellee, the county board of education of Jefferson county, Ala., to recover of the appellant the sum of $4,980, with interest thereon, claimed to be due by the appellant as an unpaid balance of the special 3-mill school tax levied on property of the appellant for the tax year beginning October 1, 1928. Appellee's complaint as it was amended contained five counts; three common counts, a count claiming that the amount sued for was due on property in school district 2-A in Jefferson county, Ala., and a count claiming that that amount was due on property of the appellant in school districts 1-A and 2-A in Jefferson county, Ala. By demurrer to the complaint, appellant raised the question of the right of appellee to maintain the action. That demurrer was overruled. By stipulation it was agreed that there be deemed pleaded the general issue, with leave to give in evidence any matter legally constituting a special defense.

In the trial, the plaintiff (appellee here) introduced the record of the levy of the 3-mill school tax in districts 1-A and 2-A, which include the part of Jefferson county not included in the cities of Birmingham, Bessemer, and Fairfield, which are separate school districts. The levy excepts those cities from the tax levied. Plaintiff then offered certified copies of the returns made by the defendant of its property in Jefferson county for taxes for the year beginning October 1, 1928, Jefferson county being divided into two divisions known as the Birmingham division and the Bessemer division. The return of defendant's property in the Birmingham division was made at the courthouse in Birmingham, and the return of defendant's property in the Bessemer division was made at the courthouse at Bessemer. The personal property covered by each of those returns was shown by an attached schedule, which, after setting out values of such properties in municipalities, set out the values of such property "out-

side of municipalities," the last-mentioned part of the schedule first setting out values of several named classes of personal property, and concluding with the item, "All other property not included in the above classes," followed by the original valuation given to property included in that item, and the valuation given to that item by the board of review.

The plaintiff then offered in evidence the receipts issued to defendant by the tax collector of Jefferson county, on the payment of its taxes for the year beginning October 1, 1928. The taxes having been paid in two installments, four receipts were issued; two in Birmingham and two in Bessemer. The plaintiff then rested.

The defendant offered in evidence a certified copy of a statement of the amount of taxes for the year beginning October 1, 1928, on property assessed by defendant in both the Birmingham and Bessemer divisions of the county, as taken from entries in the book known as "Abstract of Taxes," which is the record delivered by the county tax assessor to the county tax collector showing the amounts of the several kinds of taxes assessed against the several taxpayers of the county. That record showed the amount of the several kinds of taxes assessed against the defendant to be the same as those which the above-mentioned tax receipts showed it had paid.

Defendant then introduced the testimony of two witnesses. That testimony showed that defendant is a Tennessee corporation with an office in Birmingham, and that defendant's property included rolling stock which habitually moved on railroads through school district 2–A, and through the cities of Birmingham, Bessemer, and Fairfield, and some of which habitually moved into other states.

Upon the conclusion of the evidence, the court refused to give the following written charge requested by defendant, "If the jury believe the evidence, you must find for the defendant," and gave the following written charge requested by the plaintiff: "If you believe the evidence in this case, your verdict must be in favor of the plaintiff." Following a verdict in favor of the plaintiff, the court rendered judgment in its favor for the amount sued for.

For the appellant it was contended that an action to recover school taxes due and unpaid is not maintainable by a county board of education, but only by an official known as the county treasurer of school funds, selected pursuant to a statute which provides: "He shall receive and take charge of all funds or proceeds of any character which may accrue to the County for public school purposes, including funds for County high schools." Alabama School Code, 1927, § 295. In opposing that contention counsel for the appellee call attention to other provisions of that School Code, including the following: "All the property, estate, effects, money, funds, claims, and donations now or hereafter vested by law in the public school authorities of any County for the benefit of the public schools of any County, hereby transferred and vested in the County Board of Education, and their successors in office." Alabama School Code, 1927, § 95. It is not necessary to pass on the question of the right of the appellee to sue for and recover school funds due and unpaid if the appellee failed to prove that appellant was liable for any part of the sum sued for.

Counsel for the appellant contend that, no fraud being alleged or proved, the amount of school taxes in school districts 1–A and 2–A due from appellant is the amount of such taxes shown by the above-mentioned certified copy of the amount of such taxes, as taken from entries in the book known as "Abstract of Taxes." On the other hand, it was contended for the appellee that under the school tax levy appellant was required to pay 3 mills on the valuation of its property outside of municipalities shown by its two returns, and that the aggregate of the amounts of special school taxes in the two school districts, 1–A and 2–A, shown by the tax receipts issued to appellant being $4,980 less than 3 mills on the amount shown by its returns as the value of the properties outside of municipalities, appellant was liable for the sum of $4,980, with interest thereon.

Those contentions require consideration of provisions of the Alabama Statute (General Acts of Alabama, 1923, p. 152 et seq.), which in considerable detail prescribes the procedure leading up to, and including, the assessment of property for ad valorem taxation. That act makes it the duty of a property owner within a prescribed period to "render to the assessor under oath a full and complete list of all property of which he was owner * * * on the first day of October of that year. * * * The land and improvements thereon must be separately listed." Section 30. And "to

give an estimate of the value of each item of personal property." Section 31. After administering the oath the assessor shall "particularly inquire of the taxpayer as to the items of property and subjects of taxation owned by the taxpayer, and for which he is liable to be taxed, and property exempt from taxation, which shall be listed by items, in order that he may elicit from the taxpayer a complete statement of the whole amount and specified items of property, and subjects of taxation with which he should be charged for purposes of assessment and taxation." Ib. § 31. "For the purpose of assessment, real and personal property shall be estimated at its fair market value, according to the best judgment the assessor and the Board of Review can form upon information, inspection and otherwise." Ib. § 34. The assessor shall "from information entered on the tax return list and from all other information known to him, or which he may procure, proceed to ascertain what, in his best judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer." Ib. § 36. The assessor is required, when he has finished "his work of assessing, valuing and equalizing property" to deliver "such lists of property" to the Board of Review. Ib. § 38. The work of the assessor is subject to review and correction by the state tax commission and by a statutory board of review. Ib. §§ 50, 54, 55. The assessor is required to make an "assessment book," except that in counties having property the assessed value of which amounts to $100,000,000 or more (which includes Jefferson county), the assessor, in lieu of the assessment book, "shall be required to arrange in alphabetical order original assessment lists, and cause the same to be permanently bound, and such assessment lists when bound, shall constitute the book of assessments as herein provided. * * * Such assessment lists when bound shall be preserved permanently as a matter of record. In making the tax collector's abstracts, such abstracts shall be made direct from the assessment lists." "After the book of assessments has been completed as herein provided, the tax assessor must enter in a book in concise form, the amount of taxes assessed against each taxpayer, showing separately the amount of taxes on real estate and personal property and other subjects of taxation, and the total amount of tax due, and the fees of the assessor with a blank for the fees of the collector; and

such book he must turn over to the tax collector on or before the fifteenth day of September." Section 45. The assessment book and the assessor's duties with reference to it are defined by section 42 of the statute, which provides: "The tax assessor must make and enter in an assessment book, suitably ruled and substantially bound, in form as prescribed by the State Tax Commission, a condensed statement of all assessments made during each tax year, showing in separate columns the name of the owner, a description of the real estate and improvements thereon, the assessed value thereof, and the value of the personal property assessed for taxation; and the assessor shall compute and enter opposite the name of each taxpayer the aggregate amount of State, county and special taxes with which such taxpayer is charged. When the hearing of objections to assessments has been completed as herein provided, the tax assessor shall complete the said book by making the proper entries therein, and foot up at the bottom of each page the aggregate amount of such taxes and show in conclusion the aggregate of all such taxes."

The following are other provisions of that act:

"After the book of assessments has been completed as herein provided, the State Tax Commission or the agent or assistant thereof, shall certify on the book of assessments that the same has been examined and corrected by him by comparing the book of assessments with the tax returns showing final valuations, both as to items of property and amounts of assessments, and that the amount of State tax is $...... (here give amount) ......, the amount of county taxes is $...... (here give amount) ...... the amount of special taxes is $...... (here give amount) ......, specifying the total amount of each of such taxes, and such certificate is to be the warrant to the tax collector of the county to proceed to collect such taxes in the manner directed by law." Section 43.

"After the book of assessments has been completed as herein provided, the tax assessor must enter in a book in concise form, the amount of taxes assessed against each taxpayer, showing separately the amount of taxes on real estate and personal property and other subjects of taxation, and the total amount of tax due, and the fees of the assessor with a blank for the fees of the collector; and such book he must turn

over to the tax collector on or before the fifteenth day of September." Section 45.

We think it clearly appears from above-quoted and referred to provisions of the Alabama Statute that the list of his property required to be returned by a taxpayer does not deal with the subjects of what part of that property is subject to particular taxes, or of computing the amount of taxes against the whole or a part of that property. The duty of assessing the property for taxation is imposed on the county tax assessor; his work in that regard being subject to revision and correction by the state tax commission and the board of review. The assessment of school district taxes involves the ascertainment of the property which is subject to those taxes, including the determination of the taxable situs of particular property, the computation of the amount of such tax with which the taxpayer is charged, and the entry or record of the results of the tax assessor's work. People v. Hagadorn, 104 N.Y. 516, 10 N.E. 891; Clark v. City of Burlington, 101 Vt. 391, 143 A. 677; Cooley on Taxation (4th Ed.) § 1056. The result of the tax assessor's performance of his duty of assessing property for taxation first appears in the assessment book prescribed by the statute; the completed assessment is disclosed when the state tax commission, or the agent or assistant thereof, makes the certificate which is to be the warrant to the tax collector of the county to proceed to collect such taxes in the manner directed by law; and the assessment book, so certified to, and the abstract of taxes provided for show the amounts of taxes assessed against each taxpayer. What is to be looked to for the amounts of taxes charged against a taxpayer is the duly certified to assessment book and the abstract of taxes required to be turned over to the tax collector, not 'the taxpayer's return of his property for taxation. The tax collector's receipts, introduced in evidence, 'for the amounts of taxes shown by the abstract of taxes delivered to that official, being in the form prescribed, constitute prima facie evidence that appellant has paid all taxes due by it. Code of Alabama, 1923, § 3057. Where the state has once proceeded by its duly constituted agencies to the assessment and valuation of property, the determination is judicial in its nature, and conclusive in its results, unless impeached for fraud or want of jurisdiction, or reversed and set aside by some jurisdiction having authority to review. Anniston City Land Co. v. State, 185 Ala. 482, 487, 64 So. 110; State v. Jefferson County Bank, 200 Ala. 287, 76 So. 53. The decision in the last-cited case supports the conclusion that for any error in the assessment made resort should have been had to the statutory system of correcting assessments, and not to the courts.

For an additional reason, rulings made by the court are not sustainable. Evidence showed that appellant had rolling stock, engines, and cars, which habitually moved through Birmingham, Bessemer, and Fairfield, and through school district 2–A, and part of it habitually moved into states other than Alabama. It fairly is to be inferred that rolling stock was included in the above-mentioned item in appellant's returns, "All other property" "outside of municipalities," and that in the assessment made against appellant's property the value of that rolling stock properly was not included in the value of property subject to the special school tax levied in favor of school districts 1–A and 2–A. The appellant, a Tennessee corporation, had no office in either of those school districts. No Alabama statute authorizes the apportionment of taxes on rolling stock between school districts, or between such districts and other territorial subdivisions through which the rolling stock moves. Rolling stock habitually moving through different territorial subdivisions cannot be taxed in one of those subdivisions, in the absence of a statute authorizing the distribution of the tax between the districts or subdivisions through which the rolling stock moves. City of Bessemer v. Southern Railway Co., 157 Ala. 428, 48 So. 103. As some of appellant's rolling stock moved into states other than Alabama, the whole number of appellant's engines and cars could not be taxed in Alabama. Johnson Oil Refining Co. v. Oklahoma, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238. It appears that to sustain the claim asserted by appellee would have the effect of subjecting appellant's rolling stock to the above-mentioned special school tax. This is not permissible.

The court's rulings on requests for instructions to the jury were erroneous. The judgment is reversed.