193 So. 143

**TENNESSEE COAL, IRON & R. CO. v. STATE.**

**6 Div. 595.**

Supreme Court of Alabama.

Dec. 7, 1939.

Rehearing Denied Jan. 25, 1940.

Benners, Burr, McKamy & Forman and
Frontis H. Moore, all of Birmingham, for
appellant.

22

W. J. Wynn and T. A. McFarland, both of Birmingham, for City of Birmingham.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for City Board of Education.

THOMAS, Justice.

This is an appeal from an assessment made as an escape tax. The question before the Court is the power of the Tax Assessor for the County of Jefferson to make an escape assessment after the end of the tax year 1934 to 1938 for the City of Birmingham and for the Birmingham School District on personal property previ-

ously returned and assessed for taxation, and upon which assessment the yearly taxes have been paid in the Bessemer Division of said county.

The appeal by appellant to the circuit court was decided against the Tennessee Coal, Iron and Railroad Company, the judgment by said court being as follows:

"The court is of the opinion that the property covered by the assessments is subject to taxation for the years, 1934, 1935, 1936, 1937 and 1938 as shown therein and thereon, but not for any penalty any tax on said property to the extent of any 10% penalty being herein expressly denied; wherefore,

"It is ordered and adjudged by the court that State of Alabama, for the use and benefit of the City of Birmingham, have and recover of the defendant, Tennessee Coal, Iron and Railroad Company, a corporation and surety on appeal bond, United States Fidelity and Guaranty Company, the sum of Forty-four thousand four hundred ninety-six and 00/100 ($44,496.00) dollars, which sum includes interest at 6% from March 17, 1939, as ascertained and assessed by the court upon the proof produced upon the trial of this cause, besides all costs herein accrued for which execution may issue."

The pleading followed the statutory requirements in such matters. The appeal presents a question for decision under Section 78 of the Revenue Act of 1935, General Acts Alabama, 1935, § 78, p. 294. The subject-matter of this controversy, in terms of the above cited statute is that, "The circuit court shall so far as practicable hear such appeals according to the general rules and procedure of courts * * *. It shall *decide all questions as to* the *legality of* the *assessment and the valuation of the property.*"

The case was tried before the court without a jury on the record and an agreed statement of facts and the testimony of Mr. Roy Johnson. The agreed stipulation of facts and pertinent testimony of Mr. Johnson appear in the report of the case.

The material facts thus shown are: (1) Appellant is a Tennessee Corporation with its principal office in the City of Birmingham. (2) For years said corporation has owned water crafts operating from its business place between Birmingham port in the Bessemer Division of the county to Mobile and other given points. (3) *At no time has any of said water crafts entered or operated in the physical limits of the City of Birmingham.* If such physical facts were not shown by the agreed statement of facts, this court would take judicial knowledge of same. Hodge v. Joy, 207 Ala. 198, 92 So. 171.

Further material facts are: (4) Said property has been returned by the taxpayer and assessed for taxation by the taxing authorities in the Bessemer Division of Jefferson County throughout the time such property has been owned by the company and, according to the positive testimony of Mr. Johnson, never in the Birmingham District. (5) During each of the years involved, 1934 to 1938, both inclusive, the taxpayer returned all its property in Jefferson County for taxation both in the Birmingham and in the Bessemer Division but the water craft, the subject of the escape assessment, was returned in the Bessemer Division. (6) In each of the years, the taxing authorities duly and legally assessed *all* the property of the Company both in the Birmingham and the Bessemer Division and duly and regularly assessed the watercraft for taxation in the Bessemer Division. "That all proceedings and requirements of law leading to, culminating in, and perfecting a legal assessment of the property of the Company, including the property described in the escape assessment, for taxation were complied with for each of said years," 1934 to 1938, inclusive.

The statutes touching the subject are Section 147 of the 1929 Revenue Code, Acts 1919, p. 282, and Section 35 of the Revenue Act of 1935, Acts of 1935, p. 276. The last cited section reads as follows: "Each person making return of property for assessment shall, after the same shall have been listed and the amount of fire insurance carried thereon stated, make and subscribe to the following oath, which shall be printed or written at the bottom of the assessment sheet, and which may be administered by the Tax Assessor, his deputy or any other officer authorized by law to administer oaths: 'I do solemnly swear that the foregoing list of property returned by me (if not his own property, here state the capacity in which he returns such property for assessment) is a full and complete return of all the property owned by (here state "me" if the property returned is his own property, and if not his own property, state the name of the person, corporation or estate for whom the property is returned), or in which (here

24

designate the owner for whom return is made) had any interest whatever, *the situs of which for taxation, or exemption from taxation, is in this county, on the first of October of the present tax year,* and that the statement of the amount of fire insurance carried thereon is correct, and that the names and, where known, the addresses of the companies, firms, associations, exchanges or other organizations carrying such insurance are correct to my personal knowledge, and of the improvements on lands listed in the foregoing schedule, * * *.' " [Italics supplied.]

■ This does not require the taxpayer to specifically locate the situs of personal property other than that it is in the county. A more particular location as to town, city or school district is left for the assessing authority when the taxpayer has discharged his mandatory duty of a due return for taxes to the assessor.

The statutes are efficient to the end of a due or necessary discovery and assessment as to fair and reasonable market value. Section 157, Revenue Code of 1929, Section 38, 1935 Revenue Act, p. 27. A due hearing for review of assessments is provided by Section 157 of the 1929 Code and Section 48 of the 1935 Revenue Act. Section 55 of the 1935 Revenue Act and Section 167 of the 1929 Revenue Code show the conclusiveness of assessments made by the assessor and the board of review. These Acts provide:

General Acts of Alabama 1935, § 55, p. 285: "The Tax Assessor must make and enter in an assessment book, suitably ruled and substantially bound, in forms as prescribed by the State Tax Commission, a condensed statement of all assessments made during each tax year, showing in separate columns the name of the owner, a description of the real estate and improvements thereon, the assessed value thereof, and the value of the personal property assessed for taxation; and the assessor shall compute and enter opposite the name of each taxpayer the aggregate amount of State, county and special taxes with which such taxpayer is charged. * * *"

■ The tax ·assessor is required to make abstracts by Sections '57 and 58 of the 1935 Revenue Act, pp. 286, 287, of General Acts of Alabama, 1935. Where Book of Assessments made by permanently binding original assessment licenses as authorized by Section 55 of the 1935 Revenue Act, the tax assessor is not relieved from other duties required by law and specifically from making abstract required by Section 57 of said Act.

That is to say, by Section 58 of the 1929 Code and Section 56 of the 1935 Revenue Act, this book of assessments is required to be examined by the State Tax Commission or its agent, who is required to certify thereon that the same has been examined and corrected by him by comparing the same with the returns showing the final valuations as to the items of property and items of assessments, and that the amount of the State tax is ——— Dollars, and the amount of special taxes is ——— Dollars, and such certification is to be the warrant to the tax collector of the county to proceed to collect such taxes in the manner · directed by law.

Section 169 of the 1929 Code and Section 57 of the 1935 Revenue Act provide that when the book of assessments has been completed, the Assessor must make out a triplicate abstract of all real and personal property, showing the amount of taxes on each item extended in a column. Such abstract must be approved and certified to by the Tax Commission, one copy forwarded to the Comptroller, one to the State Tax Commission, and one delivered to the tax collector.

Section 170 of the 1929 Code and Section 58 of the 1935 Revenue Act provide for the preparation of the tax collector's abstract, which must show the amount of *taxes assessed against each taxpayer and separately the amount of taxes on real estate and personal property.*

When the whole system, set up under the Constitution and statutes is examined, it is complete to the end that property may be duly assessed for taxation; that the respective parties at interest be heard and protected under the law; that a permanent record thereof, in the shape of examined and approved abstract, etc., be delivered to the collector that he may duly collect the taxes as shown by such records from assessments, to the end that a due payment by the taxpayer will discharge such owner or taxpayer and his property from the respective duties and tax liens imposed thereon by the state, county, city and school taxing districts, and the like. This result is indicated in Section 167 of the Revenue Code of 1935 and Section 210 of the Revenue Code of 1929, to the effect that· upon the payment of taxes, fees and

costs, if any, assessed and charged against him by any taxpayer, the tax collector shall give a receipt therefor showing, among other things, the name of the taxpayer, the date of payment, the total assessed value of real and personal property separately, together with the amount of interest, costs and fees, if any, and such receipt "shall be prima facie evidence that such taxpayer has paid all of his State and county taxes for that year on the real and personal property, and other subjects of taxation contained in his assessment lists." General Acts of 1935, pp. 337, 338.

This statutory provision is taken with Section 11 of the Acts of 1911, pp. 130, 134, providing that the receipt shall include city taxes and shall be *"prima facie evidence* that such tax payer has paid his city taxes for the year stated on the real and personal property and other subjects of taxation." [Italics supplied.]

We note here that the Act requiring separate offices by county officials in Jefferson County, as touching the Bessemer Division thereof, was approved September 16, 1915, and its validity sustained in Board of Revenue of Jefferson County v. Huey, 195 Ala. 83, 70 So. 744. General Acts of Alabama, 1915, p. 549.

After all that may be said of this statutory system, the law contemplates that the tax assessor value the property at its proper taxable location after the returns have been made by the taxpayer. The action of the tax assessor is subject to review by the Tax Commission, Board of Review, etc., for certification of correctness.

To a better understanding of these statutes, the provisions of the last two Constitutions, touching the subject of situs of property for taxation, may now be considered.

The Constitution of 1875, Article XI, § 7 provides, among other things, as follows (Skinner's Alabama Constitution Annotated): "No city, town or other municipal corporation other than provided for in this Article, shall levy or collect a larger rate of taxation, in any one year, *on the property thereof,* than one-half of one per centum of the value of such property, as assessed for State taxation during the preceding year: * * *" [Italics supplied.]

It may be noted that the words "on the property thereof" mean the taxpayer's property, according to its situs. Thus was left indefinite the question of situs of tangible and intangible personal property as affecting such municipal taxes.

When the makers of the Constitution of 1901 were considering the last cited section of the Constitution of 1875, the following significant change was made: Constitution 1901, Article XI, Section 216: "No city, town, village, or other municipal corporation, other than as provided in this article, shall levy or collect a higher rate of taxation in any one year on the property *situated therein* * * *." [Italics supplied.]

Thus was supplied the definite and actual tax situs for municipalities. That is, by the significant change made in the words "on the property thereof" to "property situated therein."

"Situated therein" can have no other meaning, in this instance, than property "situated" in a city, town, village or municipal corporation.

As illustrating the difficulty and necessities entering into and controlling due assessments of property of the nature being dealt with in this appeal, in Mayor, Aldermen, &c., of Mobile v. Baldwin, 57 Ala. 61, 29 Am.Rep. 712, Mr. Chief Justice Brickell said: "It is apparent the material question presented is the liability of the vessels to municipal taxation, and the solution of this question depends on the extent of the power to impose taxes which the legislature has conferred on the city authorities. For, 'it is a principle universally declared and admitted, that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property, unless the *power be plainly and unmistakably conferred.'*—Dillon on Mun. Corp. § 605. The thirty-seventh section of the charter, or act of incorporation of the city of Mobile, empowers the mayor, aldermen and common council 'to lay taxes upon the real and personal estate,' &c., *within the city.* The tax to be laid in pursuance of an assessment and valuation thereof. The fifty-fourth section authorizes the imposition of a tax on *itinerant or transient merchants, steamboats or other vessels,* remaining in said corporation *less than one year.* * * * *."

And further—

" * * * The situs of the property, not the domicile or residence of the owner, is the test to which the liability to taxation must be submitted. The doctrine that personal property has no locality, that it

follows the person of the owner, however true as to the disposition of or succession to such property, is often an unimportant inquiry in determining whether such property should bear its just and legal proportion of public burthens. If it be visible, tangible property, or if it be property not having a visible, tangible existence, yet a legal existence, capable of an actual situs, it is the actual situs, not the domicile of the owner, most material to be considered. Protection is the legal and constitutional consideration of taxation, and that must be presumed to be afforded where it is a necessity and a duty. If the owner of personal property separate it from his domicile—commits it to another jurisdiction, so that it is not distinguishable from other property of a like kind within that jurisdiction, or from similar property casually, in the usual course of its use and enjoyment, coming within that jurisdiction —he takes it away from the jurisdiction of his domicile and commits it, not to the comity, but to the power of the place to which he transfers it. A vessel merely touching at Mobile, in its ordinary course of nagivation and trade, would not become liable to taxation, State, county, or municipal. * * *"

In Trammell v. Connor, 91 Ala. 398, 8 So. 495, 496, on authorities from New Jersey, California, Nevada and Missouri, this Court declared that personal property may acquire such a local situs in the county in which it is kept and used as to become liable to taxation thereof, although the owner resides in another county and has there returned it for taxation. The illustration used was that of a portable saw mill and a yoke of oxen used in connection with such manufacturing machinery. Mr. Justice Clopton for the Court observed: "In order, however, to render the property liable to taxation, its situs must be permanent in its nature, though not so permanent as real estate. It must have no actual location elsewhere. Property in transitu, or temporarily in the county, is not subject to assessment merely because it happens to be in the county on the day the assessment commences. * * "

The next case coming to our attention is Boyd v. Selma, 96 Ala. 144, 11 So. 393, 397, 16 L.R.A. 729, where the Court observed:

" * * * The decision referred to is Trammell v. Connor, 91 Ala. 398, 8 So. 495, where it is said: 'As regards the place at which tangible personal property is assessable for taxes, the courts have generally discarded the legal fiction that such property follows the domicile of the owner, and hold that it may have an actual situs independent of the owner's residence, constituting the condition which subjects it to taxation. * * * In order, however, to render the property liable to taxation, its situs must be permanent in its nature, though not so permanent as real estate; it must have no actual location elsewhere. * * *'

"Mr. Desty, in his work on Taxation * * * states the general rule to be that the domicile of the owner is the place where, by a legal fiction, his personal property is regarded as having its situs, and where it is to be taxed, and then declares the rule as to intangible property as follows: 'The situs of invisible and intangible property, not growing out of real estate, is with the owner. * * *'"

To like effect is National Dredging Company v. State, 99 Ala. 462, 466, 12 So. 720, 722, where it is said: "On this state of case—or even leaving out of view the considerations last adverted to—it is clear, we think, that this property is not merely temporarily within Alabama, but that to the contrary its presence here is for such an indefinite period as involves the idea of 'permanency' in the sense in which that term is used with respect to the situs of property for the purposes of taxation. It is here as any other property is or would be here in use upon the public works in Mobile Bay. Its use in that work is the same as that of the other property originally embraced in this assessment and formerly owned by a citizen of Alabama, and by him devoted to this work during previous years, the same as that of the scow which was built in Mobile for this work and has never been beyond the state, and the same as that of another scow built outside of the state for this work. All this other property is property of the state or in the state for the purposes of taxation, though it may at some uncertain future time cease to be property taxable here in consequence of its removal to other jurisdictions, as the property in controversy may sometime be carried out of the state. Until that happens, however, both classes of property enjoy the same protection of our laws; both classes are devoted to the same use; the continuation of each class within the state is alike indefinite,—the one class cannot, in short, be distinguished

from the other in any characteristic which is of importance in determining the question of taxability vel non; and hence our conclusion that the property in controversy had become so incorporated with, and a part of, the tangible property of this state, for revenue purposes, as that its taxable situs is here notwithstanding the fact that the domicile of its owner is in another state. * * *"

In State ex rel. Tallapoosa County v. Butler, State Tax Com'r, 227 Ala. 212, 149 So. 101, 102, is the observation that: "From the foregoing statute it appears that the allocation is but the natural result and necessary act in and of the assessment by the state tax commission. In fact it inures in the assessment itself. The statute expressly places upon the tax commission the duty of 'ascertaining, fixing and determining the true value' of the properties of the corporation that lie (1) 'within the different counties and (2) cities, towns and (3) school districts having a special assessment, in this state in which such portions are taxable.' (Italics and numbers supplied.) When the tax commission executes such power as the statute commands, the values so fixed by it are, by force thereof, allocated and apportioned to the respective counties, cities, and school districts, as the case may be. * * *"

The subject matter of the last cited case was the allocation and apportionment for the purpose of taxation of the several properties of the Alabama Power Company as affecting the adjacent counties of Chilton and Tallapoosa and which, it is observed, affect the situs of the several properties and rights that have accrued by reason of impounding the waters of the Tallapoosa River.

Further analogy may be found in Tennessee Coal, Iron & R. Co. v. Board of Education of Jefferson County, 5 Cir., 80 F.2d 307, opinion by Judge Walker. See also Eliasberg Bros. Mercantile Co. v. Grimes, 204 Ala. 492, 86 So. 56, 11 A.L.R. 300; Ex parte City of Birmingham ex rel. Best, 201 Ala. 641, 79 So. 113.

The pertinent statutes cited by counsel are General Acts of 1919, p. 285, § 5, subsection (c); General Acts of 1927, p. 166, Section 25; General Acts of 1935, p. 264, § 10, subsection (c). The last cited statute, as to ad valorem taxes of the nature here dealt with, is as follows: "All steamboats, barges, vessels and watercraft of every name and kind, however propelled, plying waters of this State *and the owner thereof shall return same for taxation to the assessors in the county wherein he resides and if such steamboat, barge, vessel and watercraft, is owned by a corporation, then in that county where its principal office is located.* In case of owner being an individual not residing in this State or being a corporation with no principal office in this State, then in the county or counties where used. All such steamboats, barges, vessels or watercraft whether owned by a resident or non-resident of this State, which have acquired a permanent situs in this State. *All transfer boats, steamboats or barges used by any railroad in transferring cars and passengers must be assessed and taxed in the county or counties where used, or where the owner resides, regardless of where such vessel may be registered.*"— [Italics supplied.]

In conformance with the Constitution, this statute requires as to this particular class of navigating property and ownership, that the same must be assessed in the county where the taxpayer resides; or, *if a corporation, in that county where its principal office is located.*

It should be observed that in Alabama Clay Products Co. v. City of Birmingham, 226 Ala. 631, 148 So. 328, 329, as to the assessment of shares of stock of domestic corporations, this court said:

"We, therefore, adopt as the view best supported in principle, and it seems by the majority opinion in other states, that when the charter location has become fictitious, working an evasion of taxes at the situs of its 'home or chief office,' the charter designation will be disregarded in matters of taxation. * * *

"The location of business and executive offices, where the public deals with the management, the governing bodies function, and records are kept, rather than the location of plant operations of this character, is to be deemed the location of the 'home or chief office.' 26 R.C.L. p. 180, § 152."

A foreign corporation, such as appellant, may have a commercial domicile for the purposes of taxation as to tangible and intangible properties. In First Bank Stock Corp. v. State of Minnesota, 301 U.S. 234, 57 S.Ct. 677, 680, 81 L.Ed. 1061, 113 A.

L.R. 228, it is thus stated: "The rule that property is subject to taxation at its situs, within the territorial jurisdiction of the taxing state, readily understood and applied with respect to tangibles, is in itself meaningless when applied to intangibles which, since they are without physical characteristics, can have no location in space. See Wheeling Steel Corporation v. Fox, supra, 298 U.S. [193] 203, at page 209, 56 S.Ct. 773, 776, 80 L.Ed. 1143. The resort to a fiction by the attribution of a tax situs to an intangible is only a means of symbolizing, without fully revealing, those considerations which are persuasive grounds for deciding that a particular place is appropriate for the imposition of the tax. Mobilia sequuntur personam, which has won unqualified acceptance when applied to the taxation of intangibles, Blodgett v. Silberman, 277 U.S. 1, 9, 10, 48 S.Ct. 410, 413, 72 L.Ed. 749, states a rule without disclosing the reasons for it. But we have recently had occasion to point out that enjoyment by the resident of a state of the protection of its laws is inseparable from responsibility for sharing the costs of its government, and that a tax measured by the value of rights protected is but an ·equitable method of distributing the burdens of government among those who are privileged to enjoy its benefits. See People of the State of New York ex rel. Cohn v. Graves, 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666, [108 A.L.R. 721] decided March 1, 1937."

It is unnecessary to advert to that line of decisions collected in State v. Doster-Northington Drug Co., 196 Ala. 447, 71 So. 427,·as to finality of tax proceedings after the expiration of the current tax year, as we now indicate that taxes on the instant properties were duly and properly assessed in the Bessemer Division of Jefferson County, where appellants' watercraft, the subject of this controversy, is located.

Having in view the several Constitutions hereinabove indicated, the significant change in the Constitution of 1901 (Article XI, § 216) from that indicated in Article XI, § 7 of the Constitution of 1875; the several sections of the revenue acts touching the peculiar property here dealt with.; adverting to the fact that the instant corporation had its head office located in the State of Tennessee, its principal business office located in the County of Jefferson and municipality of Birmingham, and its port, from which its watercrafts navi-gate in the Bessemer Division of the County of Jefferson wherein its principal business office is located, the assessments were duly declared. That is to say, a harmonious construction of these statutes, under the Constitution, requires that the assessment of appellants' watercrafts should be, and were, properly returned at Bessemer, the division of Jefferson County where its only and essential navigating point, docks and wharves are located. This has been the uniform course of assessment by appellant for taxes on the present property that is sui generis in class and kind. The payment of said taxes has been duly made therein.

It follows from the foregoing that there was error in rendition of the judgment of the circuit court against appellant.. Said judgment is reversed and one here rendered in favor of the Tennessee Coal, Iron and Railroad Company.

Reversed and rendered.

BOULDIN, BROWN, and FOSTER, JJ., concur.

### On Rehearing.

Application for rehearing overruled.

All Justices concur; BOULDIN, J., concurs in result.

BOULDIN, Justice (specially concurring).

In my opinion it was within Legislative Power to fix the situs of water craft plying the waters of this state for purposes of taxation, especially vessels navigating through several counties, having no fixed situs in any county.

In my opinion the Statute, Acts of 1935, p. 264, Subsection 10 (c), does fix the situs of this property for taxation in Jefferson County. The basis on which the tax situs is fixed at the principal place of business in such cases, is that the owner here receives the protection of the laws.

When the property became assessable in Jefferson County for state purposes, this automatically fixed the situs for taxation for county purposes in Jefferson County.

Since this situs was determined by the location of the principal place of business, of the owner, the situs for city taxation would be determined in the same manner, namely,. in Birmingham, but for the divi-

sion of Jefferson County into two distinct legal entities for purposes of taxation.

Whether this property should be returned for taxation for state and county purposes in the Bessemer Division, I express no opinion.

Section 216 of the Constitution expressly limits city taxation to the values fixed by the assessment for state purposes for the last preceding year. The city must look to the records of assessment for state purposes in making its assessment of properties for city purposes. Such records disclosed an assessment for state and county purposes in the Bessemer Division, a taxing subdivision separate from that in which the city of Birmingham was located.

It is said one of the objectives of the constitutional plan for city taxation was to invite city authorities to back up the county authorities in preventing escapes, and under-valuations in state and county assessments.

Since there was no assessment for state or county purposes for the Subdivision in which Birmingham was located, but an assessment fixing the tax situs in the Bessemer Division, in my opinion the city of Birmingham has no record data on which to base a lawful assessment as for an escape.

For these reasons I concur in the result.

But I cannot concur in the view that Section 216 limits city taxation of personal properties to such as have an actual fixed situs within the corporate limits. Such construction, would lead logically to the exclusion of intangibles having no actual situs. That these may be taxed at the residence of the owner, wherever be the properties from which they are derived is settled by all our decisions. Water craft, having no situs in any one county, may be lawfully taxed on the same principle. "Situated therein," means the lawful situation or situs for tax purposes.

Cities struggling to carry on within constitutional restrictions, should not be hampered by a construction which strips the Legislature of authority to fix a tax situs of personal property at the residence of the owner, where such property has no definite situs in fact and still has the protection of the laws of the state, and the owner has the protection of both state and city laws.